**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



**Russ Kendig
United States Bankruptcy Judge**

**Dated: 04:16 PM February 14, 2022**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| HERITAGE CHRISTIAN SCHOOLS OF OHIO, INC., | ) ) | CASE NO. 21-60124 |
| | ) | JUDGE RUSS KENDIG |
| Debtor. | ) ) | |
| | ) | **MEMORANDUM OF OPINION (NOT** |
| | ) | **INTENDED FOR PUBLICATION)** |

Now before the court is Debtor's objection to Claim Number 3 by creditor Heritage Canton, LLC.

The court has subject matter jurisdiction over this case under 28 U.S.C. § 1334 and the general order of reference entered by the United States District Court for the Northern District of Ohio on April 4, 2012. Gen. Order 2012-7. The court has authority to enter final orders in this matter. Pursuant to 11 U.S.C. § 1409, venue in this court is proper. The following constitutes the court's findings of fact and conclusions of law under Bankruptcy Rule 7052.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

## FACTS

On July 1, 2002, Debtor borrowed $300,000 from Unizan Bank, National Association ("Unizan") and executed a promissory note for the same amount (the note was renewed and restated on August 1, 2013, for $310,000), which was secured by a mortgage on Debtor's real property. That same day, Debtor also granted Unizan a security interest in non-real property including inventory, equipment, accounts, etc. ("non-real collateral") via a commercial security agreement and Unizan properly perfected the security interest on July 3, 2002, by filing a UCC

1

financing statement with the Ohio Secretary of State. In 2006, Unizan merged with Huntington National Bank ("Huntington") and Huntington succeeded Unizan in these agreements. On September 15, 2014, Debtor borrowed $250,000 from Huntington and executed a promissory note. This debt was secured by another mortgage on Debtor's real property as well as an amendment to the prior commercial security agreement covering the non-real collateral and another financing statement was filed.

On November 1, 2019, Huntington transferred both promissory notes and assigned both mortgages to Private Capital Lending ("PCL"). A few days later, Huntington assigned both financing statements to Quest Solutions, Inc. ("Quest"). On December 27, 2019, PCL assigned both notes and both mortgages to Heritage Canton, LLC, ("HC"). That same day, PCL executed a document (the "PCL assignment") that purported to assign "all rights, title and interests of [PLC], as Secured Party, in a Business Loan Agreement and Commercial Security Agreement and related documents . . . with [Debtor]" to Quest, who, per the agreement, immediately assigned them to HC. Quest eventually assigned the financing statements to HC on March 3, 2021 (the "post-petition assignment"). PCL, Quest, and HC were all entirely owned and controlled by the same person, Charles Ahmad.

Debtor filed its Chapter 11 Subchapter V petition on February 2, 2021. HC filed a claim for $640,989.65, the total amount of the unpaid debt on both promissory notes, on March 24, 2021. There is no dispute on the amount of the claim. The dispute before the court is about the extent to which the debt is secured. Both sides agree that at least $500,000, from the mortgages on the real property, is secured. HC claims that all the debt is secured because it has security interests in the non-real collateral from the commercial security agreements and UCC financing statements. However, Debtor argues that HC does not have a security interest in the non-real collateral because it did not receive the financing statements from Quest until after the petition date.

## **DISCUSSION**

Federal Rule of Bankruptcy Procedure 3001(f) provides that a claim properly filed and executed "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). When a party objects to a claim, it must introduce "evidence of probative force equal to that of the allegations of the creditor's proof of claim to rebut the presumption in favor of the creditor." In re Unimet Corp., 74 B.R. 156, 165 (Bankr. N.D. Ohio 1987). If the objecting party can rebut the presumption, then the burden shifts to the claimant, who must "prove the validity and amount of his claim by a preponderance of the evidence." *Id.* Ultimately, the court must determine whether the claimant has satisfied this standard. *See id.* (citation omitted).

The central issue in this case is whether HC's claim on the non-real collateral is secured. Debtor argues that HC has no evidence that it held a security interest at the petition date. (Debtor Obj. Claim ¶ 7, ECF No. 163.) Specifically, the PCL assignment did not actually assign the security interests to HC because the phrase "Business Loan Agreement and Commercial Security Agreement" used in the document is vague and not properly defined and there is no proof that the notes themselves were assigned to Quest before being assigned to HC, as the document

called for. (*Id*. ¶ 8.)

For the assignment of a security interest to be valid against the debtor, the assignor must give the debtor "a notification, authenticated by the assignor or the assignee, that the amount due or to become due has been assigned and that payment is to be made to the assignee." Ohio Rev. Code Ann. § 1309.406(A) (West). Such a notification must "reasonably identify the rights assigned." Ohio Rev. Code Ann. § 1309.406(B)(1) (West). In Southern Floridabanc Savings Association v. Professional Investments of America, Inc., the court held that business partners who owned an apartment building and had agreed to split profits had been properly notified of an assignment of a security interest where the partners had signed a consent agreement stating that the assignor, one of the partners, was assigning his share of partnership distributions to the assignee, a bank, and that the distributions should be made directly to the assignee. *See* S. Floridabanc Sav. Ass'n v. Prof'l Invs. of Am., Inc., 602 N.E.2d 677 (Ohio Ct. App. 1991), cause dismissed sub nom. S. Floridabanc Sav. Ass'n v. Prof'l Invs. of Am., Inc., 588 N.E.2d 863 (Ohio 1992).

Here, the PCL assignment did not properly transfer the security interests because the document does not meet the notice requirements. First, the PCL assignment references "*a* Business Loan Agreement and Commercial Security Agreement and related documents" (Proof of Claim at 112, ECF No. 3-1) (emphasis added) when there are *two* such agreements – the original one dated July 1, 2002, and the second one, the amendment, dated September 15, 2014. (Creditor Resp. Debtor Obj. Ex. B ¶ 6, ECF No. 172.) It is not clear which agreement's rights (or if both agreements') are being assigned, unlike in Floridabanc, where the specific partnership distribution rights were identified in the consent agreement. *See* 602 N.E.2d at 677-78; (Proof of Claim at 112, ECF No. 3-1.) Second, in contrast to the consent agreement in Floridabanc that was signed by the other business partners (i.e., the partners other than the assignor) (*see* 602 N.E.2d at 677-78), here there is no evidence that this assignment was ever sent to Debtor or that Debtor saw it before filing for bankruptcy. Third, unlike the consent agreement in Floridabanc, the PCL assignment did not include an instruction to make payments to HC as the assignee, instead of PCL as the assignor. See 602 N.E.2d at 677-78; (Proof of Claim at 112, ECF No. 3-1.) Thus, the assignment could not have been effective against Debtor because it did not reasonably identify the rights assigned and there is no evidence that Debtor was made aware of it. Lastly, as the Debtor correctly points out, the notes were assigned directly from PCL to HC but never assigned to Quest along with the security interests (even though the PCL assignment claimed that they would be), showing that the anticipated transfer did not actually take place. (Proof of Claim at 80, 85, 112, ECF No. 3-1.) Thus, Debtor is correct that the PCL assignment did not assign the security interests to HC.

Next, Debtor argues that the post-petition assignment of the UCC financing statements did not create a security interest in the non-real collateral. (Obj. ¶¶ 8-9, ECF No. 163.) According to Debtor, the bankruptcy code's "snapshot rule" "froze" the positions of creditors at the petition date, so HC would have the notes and mortgages while Quest would have the security interest in the non-real collateral. (*Id*. at ¶¶ 8-10.) The post-petition transfer could not have given HC a security interest because a creditor cannot improve its position after the petition date to the detriment of other creditors or the debtor. (*Id.*)

3

Under Section 502(b) of the bankruptcy code, a valid claim by a creditor will be allowed at its value "as of the date of the filing of the petition." 11 U.S.C. § 502(b). In other words, creditors' claims are "frozen" on the petition date and are limited to "the amount that the creditor would have otherwise been entitled to receive at the time the debtor filed for bankruptcy." In re Brown, 310 B.R. 341, 346 (Bankr. N.D. Ohio 2004). It follows then, that a creditor cannot improve its position at the expense of the debtor or another creditor after the petition date. *See id*. For example, the court in In re Brown held that collection costs on student loans that were assessed *before* the petition date were allowable as a claim under § 502(b), but costs assessed after the petition date were not allowed because they took place after the claims had been "frozen" and the creditor would have improved its position to the detriment of the debtor. *See id.*

Here, Debtor filed its petition on February 2, 2021 (Debtor Chapter 11 Subchapter V Voluntary Pet., ECF No.1), so that is the date on which its creditors' claims were "frozen." At that time, Quest held the UCC financing statements and HC held the notes. (Proof of Claim at 80, 85, 100, 104, ECF No. 3-1.) The post-petition assignment by Quest to HC did not give HC a security interest because it occurred after the petition date and would serve to improve HC's position at the expense of Debtor because more of the debt would be secured than at the petition date.

Debtor has met its burden under the pleading standard. It has provided evidence with significant probative value that HC did not have a secured claim on the non-real collateral at the petition date. With the presumption of validity rebutted, the burden now shifts to HC, the claimant, to demonstrate that its claim is valid.

HC begins by arguing that its post-petition assignment from Quest created a security interest because the assignment did not violate the automatic stay under § 362(a). (Resp. ¶¶ 20, 23, ECF No. 172.) The security interest had already been perfected and thus, was still effective against Debtor the entire time and there was no need for re-perfection or an additional filing. (*Id.* ¶¶17-20.) Further, the security was not property of the estate and did not alter the claim against Debtor, so the transfer was not voidable under § 549 of the bankruptcy code. (*Id.* ¶¶ 21-24.)

Section 362(a) of the bankruptcy code automatically stays a wide variety of legal actions against the debtor. *See* 11 U.S.C. § 362(a). Specifically, § 362(a)(4) and (5) stay efforts to perfect a new lien against the estate or to perfect a pre-petition lien that was not already perfected. *See* 11 U.S.C. § 362(a)(4)(5). However, when a secured party assigns its security interest after it has already been perfected, it remains perfected "against creditors of and transferees from the original debtor" with no new filing necessary. Ohio Rev. Code Ann. § 1309.310 (West). Thus, the assignment of an already perfected security interest from one creditor to another after the petition date does not violate the automatic stay. The Sixth Circuit held as such in Rogan v. Bank One, National Association, where a bank that recorded an assignment of a note and accompanying mortgage after the petition date did not violate the automatic stay because the assignment had already occurred, albeit with a blank indorsement that had to be corrected after the petition date, and the bank was not perfecting a security interest or changing its position in any way. *See* Rogan v. Bank One, Nat'l Ass'n (In re Cook), 457 F.3d 561, 568 (6th Cir. 2006). Under § 549 of the bankruptcy code, the trustee or debtor-in-possession may avoid certain unauthorized post-petition transfers. *See* 11 U.S.C. § 549(a). However, this power extends only

to transactions involving property of the estate. *See* 5 Collier on Bankruptcy P 549.04 (16th 2021). While "all legal or equitable interests of the debtor in property" are considered property of the estate, non-debtors' legal and equitable interests are not. 11 U.S.C. § 541(a)(1).

It is true that the security interests were perfected when Unizan and Huntington filed the financing statements long before the petition date. (Resp. Ex. B ¶ 7, ECF No. 172.) Thus, they remained perfected against Debtor regardless of whether they were assigned. Here, like in Rogan, Quest assigned its already-perfected security interests to HC after the petition date. *See* 457 F.3d at 568; (*Id*. ¶¶ 7, 11). However, unlike in Rogan, here the note and the security interest had been separated and, by consolidating them with HC, the post-petition assignment improved HC's position by giving it a secured claim it did not have at the petition date. *See* 457 F.3d at 568. Thus, the post-petition assignment was an act to create a lien against property of the estate and violated the automatic stay.

HC is correct, though, that the transaction could not be voided under § 549(a) because the security interests belonged to Quest, a creditor, and were not property of Debtor. (Resp. Ex. B ¶ 10, ECF No. 172.) However, this fact does not give HC a security interest. As discussed earlier, the snapshot rule under § 502 froze HC's claims at the petition date and HC did not yet have a security interest by that date. Allowing it to claim the security interest just because it was not voidable would allow it to improperly improve its position at the expense of Debtor.

Next, HC claims that PCL sold and assigned the security interests to HC after purchasing them from Huntington. (Resp. ¶ 27, ECF No. 172.) However, the financing statements were assigned directly from Huntington to Quest before this document was executed (Resp. Ex. B ¶ 10, ECF No. 172) so PCL could not have assigned them to HC because PCL never had control of them.

Finally, HC argues that it was the real owner of the financing statements the whole time after the Huntington transfers. (Resp. ¶¶ 28-33, ECF No. 172.) According to HC, because it holds the note itself, HC, not Quest, is the actual debtholder and can enforce the security interest even without the financing statements. (*Id.*) Further, because PCL, Quest, and HC all had common control and ownership, Quest was acting as HC's agent by holding the UCC financing statements (which really belonged to HC). (*Id*. ¶¶ 37-38.)

A secured debt may be enforced only by "a person who is entitled to enforce the obligation the [debt] secures." Mid Am. Mortg., Inc. v. Scott, 2018 WL 1779372 (Ohio App. 8 Dist., 2018). Ohio's Uniform Commercial Code expressly gives the enforcement rights for a security agreement to the secured party, i.e., the holder of the security interest and the one who possesses the financing statement (if perfected by filing). *See* Ohio Rev. Code Ann. §§ 1309.102(A)(73)(a), 1309.601 (West). However, the holder of a secured debt may assign the security interest to an agent without giving up the right to enforce the debt. *See* Gemini Servs., Inc. v. Mortg. Elec. Registration Sys., Inc. (In re Gemini Servs., Inc.), 350 B.R. 74, 81-82 (Bankr. S.D. Ohio 2006). In Gemini Services, Inc. v. Mortgage Electronic Registration Systems, Inc., the court held that when the holder of a mortgage transferred legal title in the mortgage to its agent in accordance with an agency agreement, the mortgage-holder retained the ability to

enforce the debt because the mortgage was "merely an incidental security interest to the debt." *Id.*

Quest, not HC, owned the security interests and had the exclusive right to enforce them as of the petition date because its name was on the financing statements as the secured party. (Proof of Claim at 100, 104, 110, ECF No. 3-1.) Huntington assigned the financing statements directly to Quest and Quest did not assign them until after the petition date. (*Id.*) Also, unlike in Gemini, Quest was not acting as HC's agent because there was no agency agreement. *See* 350 B.R. at 81-82. They shared common ownership and control (Resp. Ex. B ¶ 12, ECF No. 172) but that is not enough to warrant agency treatment – there must have been some evidence of a formal agency relationship like there was in Gemini Services, but there was not. *See* Gemini Services, 350 B.R. at 81-82.

## CONCLUSION

Debtor met its burden of showing evidence that HC's claim for a security interest in the non-real collateral was not valid. Debtor showed that the attempted assignment on December 27, 2019, was not effective and that Quest, not HC, owned the security interest on the petition date. It was not assigned to HC until after the petition date. When the burden shifted to HC, HC was unable to prove that its claim was valid. HC's arguments that it owned the security interest the whole time or that Quest was holding the financing statements as an agent were without merit. The financing statements were assigned directly from Huntington to Quest and there was no evidence of an agent-principal relationship between Quest and HC. Also, the post-petition assignment violated the automatic stay because it attempted to give HC new secured debt after the petition date. Allowing HC to "bootstrap" the security interest through the later assignment would drastically improve HC's position and be unfair to Debtor, who would face a larger secured debt than if the freeze was applied at the petition date. Lastly, the fact that the post-petition assignment could not be avoided under § 549 is irrelevant. Accordingly, Debtor's objection is sustained and only the $500,000 relating to the mortgages on Debtor's real property should be recognized as secured debt, with the remaining $140,989.65 as unsecured debt. An order will be entered immediately.

# # #

**Service List**

Heritage Christian Schools of Ohio, Inc.
2107 6th St SW
Canton, OH 44706-1306

Anthony J. DeGirolamo
3930 Fulton Drive NW, Suite 100B
Canton, OH 44718

6

Matthew R. Duncan
Mathew E. Doney
Brennan Manna & Diamond LLC
75 East Market Street
Akron, OH 44308

Frederic P. Schweig, Trustee
19885 Detroit Road #239
Rocky River, OH 44116

Amy Good
Office of the U.S. Trustee
H.M. Metzenbaum U.S. Courthouse
201 Superior Avenue East Suite 441
Cleveland, OH 44114

7